UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TASHEEBA THOMPSON,
o/b/o E.I.E.G.,

         Plaintiff,

 v.              **DECISION AND ORDER**
                     17-CV-901(HKS)
NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

         Defendant.

## INTRODUCTION

    Plaintiff, on behalf of her child, E.I.E.G., challenges an Administrative Law Judge's ("ALJ") determination that E.I.E.G. is not entitled to benefits under the Social Security Act ("the Act"). Plaintiff alleges that E.I.E.G. has been disabled since his birth on July 8, 2000, due to oppositional defiant disorder, learning disorder, processing disorder, and language disorder. Tr.[1] at 123-28, 49-50. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Brian LeCours is not supported by substantial evidence in the record and is based on erroneous legal standards.

    Presently before this Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 11). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence and consistent with

---

[1] "Tr." refers to the Social Security Transcript which appears at Docket No. 5.

applicable legal standards. Thus, the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is granted and Plaintiff's motion (Dkt. No. 7) is denied.

## PROCEDURAL HISTORY

On September 26, 2013, Plaintiff filed an application for Supplemental Security Income (SSI) benefits for E.I.E.G, which the Commissioner of Social Security denied on December 9, 2013. Tr. at 22. Upon Plaintiff's written request for a hearing, ALJ LeCours held an administrative hearing via video teleconference on February 1, 2016, at which E.I.E.G. and his mother, represented by counsel, testified. Tr. at 43. On March 30, 2016, the ALJ issued a decision finding that E.I.E.G. was not disabled. Tr. at 19-42. The Appeals Counsel denied Plaintiff's request for review on July 17, 2017, making the ALJ's decision the Commissioner's final decision.

Plaintiff filed the current action challenging the Commissioner's final decision in the United States District Court for the Western District of New York on September 12, 2017. Dkt. No. 1. On April 2, 2018, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 7. Defendant moved for the same relief on May 25, 2018. Dkt. No. 11.

## DISCUSSION

**Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the district court must only decide whether the ALJ applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the ALJ's findings were supported by substantial evidence in the record. See *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

If the Court finds no legal error, and that there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. See *Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**Standard for Disabled Child's SSI Benefits**

An individual under the age of 18 is considered disabled when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §§ 416.924 (a)-(d).

First, the ALJ determines whether the child is engaged in any substantial gainful activity. 20 C.F.R. § 416.924(b). Second, if the child is not engaged in any substantial gainful activity, the ALJ determines whether the child has a medically severe impairment or combination of impairments that cause "more than a minimal functional limitation." 20 C.F.R. § 416.924(c). Third, the ALJ determines whether the child's severe impairment(s) meets, medically equals, or functionally equals the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Conlin*, 111 F. Supp. 3d at 384-85.

Where an impairment medically meets or equals a listed impairment, the child will be found disabled. 20 C.F.R. § 416.924(d)(1). If a child's impairment or combination of impairments does not meet or equal a listed impairment, the ALJ must assess all functional limitations caused by the child's impairments in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting

4

and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926(a),(b)(1). A child is classified as disabled if he or she has a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §§ 416.926a(d). "A 'marked' limitation exists when the impairment 'interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities.'" *Hart v. Colvin,* No. 12-CV-1043-JTC, 2014 WL 916747, at *3 (W.D.N.Y. Mar. 10, 2014) (citing 20 C.F.R. § 416.926a(e)(2)(i)). "An 'extreme' limitation is an impairment which 'interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities.'" *Id.* (citing 20 C.F.R. § 416.926a(e)(3)(i)).

**ANALYSIS**

Applying the three-step evaluation in this case, the ALJ determined that: (1) E.I.E.G. had not engaged in substantial gainful activity since September 26, 2013, the application date (Tr. at 25); (2) E.I.E.G.'s learning disability/auditory processing disorder and oppositional defiant disorder were severe impairments (Tr. at 25-26); and (3) E.I.E.G. did not have an impairment or combination of impairments that met or medically equaled an impairment contained in the Listing of Impairments. (Tr. at 26). Assessing the impact of E.I.E.G.'s impairments in the six relevant domains, the ALJ concluded that his deficits did not functionally equal a listed impairment. Tr. at 26-36. The ALJ started with the premise that E.I.E.G. was an adolescent when his mother filed the application for benefits. Tr. at 25. He determined that E.I.E.G. had a less than "marked" limitation in the domains of acquiring and using information, attending and

5

completing tasks, interacting and relating to others, and health and wellbeing, and no limitation in moving about and manipulating objects and in his ability to care for himself. Tr. at 31-36. Thus, the ALJ concluded that E.I.E.G. was not disabled and not entitled to benefits. Tr. at 36.

Plaintiff argues that the ALJ did not properly evaluate the medical and "other source" opinions and failed to reconcile evidence in the record showing that E.I.E.G. had at least a marked limitation in acquiring and using information. Dkt. No. 7-1, pp. 15-24. Plaintiff assigns two specific errors to the ALJ's opinion analysis. First, that the ALJ failed to mention a January 2016 Teacher Questionnaire in which E.I.E.G.'s teacher, Rita M. Huk, opined that he had impairments in the domains of acquiring and using information, attending to and completing tasks, and interacting and relating to others. Dkt. No. 7-1, pp. 15-18; Tr. at 248. Second, the ALJ erroneously relied on the opinion of the state agency consultant, Jennifer Meyer, MD, which was predicated on "stale, outdated and inaccurate" information and therefore, was not based on substantial evidence. Dkt. No. 7-1, pp. 18-21. Plaintiff also argues that the ALJ failed to reconcile record evidence that E.I.E.G. met the functional equivalence of the listing in the domain of acquiring and using information. Dkt. No. 7-1, pp. 21-24.

**Teacher Questionnaire**

Plaintiff argues that the ALJ "does not mention Ms. Huk's teacher questionnaire anywhere in his decision" and therefore, it is impossible to tell what weight he afforded her opinion. Dkt. 7-1, p. 15. Plaintiff contends that the ALJ's failure

to evaluate Ms. Huk's opinion was "egregious" because she is "the only person amongst the opinion providers to have any sort of ongoing relationship with [E.I.E.G.]." Dkt. No. 7-1, p. 15. While it is true that the ALJ does not explicitly acknowledge Ms. Huk's teacher questionnaire, this failure does not warrant a remand for two reasons.

As an initial matter, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Brault*, 683 F.3d at 448 (citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998)); *see also Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1981) for the principle that "[t]he ALJ was not required to mention or discuss every single piece of evidence in the record"). That is, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (citation omitted). "When . . . the evidence of record permits us to glean the rationale of an ALJ's decision," a court need not remand a social security case for "further findings or a clearer explanation." *Mongeur*, 722 F.2d at 1040.

The record in this case shows that the ALJ considered Ms. Huk's teacher questionnaire in deciding E.I.E.G.'s claim. ALJ LeCours explicitly referenced it at the start of the hearing, stating "[Exhibit] 14-E – that's a teacher questionnaire recently submitted into the file, from Rita Huk." Tr. at 48. Later in the hearing, he summarized the substance of Ms. Huk's questionnaire, stating "[h]is current teacher in that questionnaire that you discussed earlier, did make it clear that he does have some pretty serious limitations in the classroom." Tr. at 50. In his decision, ALJ LeCours

7

states that he considered "information from other sources, such as school teachers" (Tr. at 26) and references E.I.E.G.'s educational records and reports (Tr. 25, 28-30). Under the circumstances, it cannot be said that the ALJ failed to consider Ms. Huk's teacher questionnaire.

Secondly, even if the ALJ had given substantial weight to Ms. Huk's questionnaire, it would not have compelled a finding that E.I.E.G. was disabled.[2] Ms. Huk assessed E.I.E.G. in the five domains on a scale of 1 to 5, 1 representing "no problem" and 5 meaning a "very serious problem." Tr. at 241-48. She opined that E.I.E.G. had a "serious problem" (4 out of 5) in only one domain, attending and completing tasks, a "slight" or "moderate problem" (average of 3 or lower out of 5) in the areas of acquiring and using information and interacting with others, and "no problem" (1 out of 5) in the areas of moving about and manipulating objects and caring for himself. Tr. at 243-48. Ms. Huk did not find that E.I.E.G. had "a very serious problem" – a 5 out of 5 – in any domain. Tr. at 243-48. Therefore, her questionnaire does not

---

[2] This Court notes that teachers are not considered acceptable medical sources in 20 C.F.R. § 416.913(a), and therefore, their opinions are not entitled to controlling weight. *Piatt v. Colvin,* No. 13–CV–6436 EAW, 80 F.Supp.3d 480, 493, 2015 WL 274180, at *12 (W.D.N.Y. Jan. 22, 2015); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 386-87 (W.D.N.Y. 2015) (stating that "[i]t is well established that teacher questionnaires are considered valid 'other source' opinions"). The amount of weight to give "other source" opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole. 20 C.F.R. § 416.927(c). Ultimately, the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, [though] those decisions should be explained." *Oaks v. Colvin,* No. 13-CV-917-JTC, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014) (quoting *Sears v. Astrue,* No. 2:11–CV–138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012)); *Conlin*, 111 F. Supp. 3d at 386.

support a finding that E.I.E.G. had a marked limitation in at least two domains or an extreme limitation in one domain.

Notably, Ms. Huk assessed that E.I.E.G., then in the 8th grade, was "at grade level" in reading, math, and written language. Tr. at 241. Although E.I.E.G. had been retained in the 1st and 4th grades (Tr. at 29, 53), he was, according to his teacher, able to keep up with the 8th grade curriculum in his self-contained classroom. Tr. at 241. This supports the ALJ's conclusion that E.I.E.G.'s deficits did not render him disabled. Accordingly, this Court declines to remand Plaintiff's case to the Agency based on the ALJ's treatment of Ms. Huk's questionnaire.

**Reliance on the State Agency Consultant**

Plaintiff next argues that the ALJ erred in relying on Dr. Meyer, a non-examining state agency pediatrician, who opined in December 2013 that E.I.E.G. has a "less than marked limitation" in acquiring and using information, attending and completing tasks, and health and physical well-being, and "no limitation" in interacting and relating with others and caring for himself. Tr. at 68. Plaintiff contends that by the time the ALJ rendered his decision in March of 2016, Dr. Meyer's opinion was "[s]tale, [o]utdated, and [i]naccurate," and therefore, the ALJ's decision "cannot be said to be based on substantial evidence." Dkt. No. 7-1, p. 18.

This Court finds this argument unpersuasive for several reasons. First, Dr. Meyer published her opinion in 2013, at a time when E.I.E.G.'s mother alleged that

9

he was disabled by oppositional defiant disorder, and unspecified learning, processing, and language disorders, notably, all *developmental* impairments. Therefore, Dr. Meyer's opinion is highly probative of whether E.I.E.G. was meeting developmental expectations in the years leading up to the ALJ's 2016 decision. If Dr. Meyer found developmental delays in 2013, this increased the likelihood that E.I.E.G. was suffering from a delay in 2016. Likewise, if Dr. Meyer noted the absence of developmental delays in 2013 (which she did), this decreased the likelihood that E.I.E.G. suffered from such delays in 2016. That Dr. Meyer did not review E.I.E.G.'s subsequent treatment records does not render her opinion stale. *Camille v. Colvin*, 652 F. App'x 25, 27 n.4 (2d Cir. June 15, 2016).

Secondly, it is well established that the opinion of a non-examining medical source can constitute substantial evidence where it is consistent with the other medical record evidence. *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995). Dr. Meyer's opinion was fundamentally consistent with the medical and education records post-dating her December 2013 decision – cited to by the ALJ – which showed that E.I.E.G. improved academically and behaviorally. The only exception was E.I.E.G.'s worsening deficits in the domain of interacting and relating with others, which the ALJ found were more pronounced in 2016 (i.e., were causing more problems in E.I.E.G.'s daily life) than Dr. Meyer had concluded in 2013.[3] Tr. at 33, 68.

---

[3] An ALJ's conclusions about a claimant's deficits need not perfectly correspond with any of the opinions of the medical sources cited in his or her decision; rather, he or she may weigh all of the evidence and make a finding that is consistent with the record as a whole. *Barry v. Colvin*, 606 F. A'ppx 621, 623-24 (2d Cir. 2015). That is exactly what the ALJ did here.

For example, according to his mother, E.I.E.G.'s school performance "improved" after his transfer to Futures School in 2014, where he got "his first . . . passing report card," achieved an "average" school performance, and learned to "manage his behaviors" in the classroom. Tr. 52, 54, 414, 485, 487-88, 493-95. In September 2014, Plaintiff's mother discontinued his counseling at Child and Family Services to focus instead on tutoring, after reporting in May and June 2014 that E.I.E.G. was "doing better at home and completing things independently," "keeping his room clean and keeping up with other chores." Tr. at 416-17, 438-443, 467, 480, 487-88.

In May 2014, Nicole R. Kuna, speech therapist at Buffalo Hearing and Speech, assessed E.I.E.G. with having only mild to moderate limitations in receptive language, expressive language, and oral reading, normal phonological processing skills (with only two mild limitations), and independence in word recognition decoding at the 6th grade level. Tr. at 428-431. She described E.I.E.G. as "pleasant and cooperative" with "excellent attention" throughout the evaluation, and gave him a good prognosis, predicting that E.I.E.G. would improve his language and literacy skills with skilled intervention. Tr. at 433. Two years later, in 2016, Buffalo Public Speech-Language Pathologist Lynn Connare evaluated E.I.E.G.'s core language skills in the low average range, his receptive language skills as moderately delayed, his expressive skills in the average range, his language memory skills in the borderline range, his verbal interactions as age appropriate, with spontaneous speech that presented "no concerns," and average oral expression skills. Tr. at 620-23. Ms. Connare opined that E.I.E.G.

"presents as a child with age appropriate speech production and oral motor skills," and therefore, did not qualify for speech therapy services. Tr. at 622-23.

This post-2013 evidence is wholly consistent with Dr. Meyer's opinion that E.I.E.G. had less than marked limitations in the relevant areas of acquiring and using information and attending and completing tasks. Therefore, the ALJ did not err in relying on Dr. Meyer's opinion as substantial evidence that E.I.E.G. was not disabled.

**ALJ's Assessment of E.I.E.G.'s Limitations in Acquiring and Using Information**

Plaintiff lastly argues that the ALJ "ignores the impact of [E.I.E.G.]'s oppositional defiant disorder and speech and language deficits on his learning," particularly in the domain of acquiring and using information. Having reviewed the record, this Court finds that the ALJ properly considered all of the evidence in reaching his conclusion that E.I.E.G. had a less than marked limitation in this area.

The domain of acquiring and using information concerns itself with how well a claimant acquires or learns information, and how well he uses the information that he has learned. 20 C.F.R. § 416.926a. The ALJ found that E.I.E.G.'s learning disability/auditory processing disorder and oppositional defiant disorder were severe impairments which caused him "significant struggles academically," such as being retained in the 1st and 4th grades and having poor grades in his current special education classroom. Tr. at 25, 31. Nonetheless, ALJ LeCours found that other facts supported the conclusion that E.I.E.G.'s deficits in acquiring and using information were

12

not disabling.  For example, E.I.E.G.'s valid IQ testing showed that he had an IQ in the 80s which was low but still in the average range.[4]  Jane Ippolito, Psy.D., the examining consulting psychologist, opined that E.I.E.G. had only "mild limitations" in the ability to understand age appropriate directions, and notwithstanding those limitations, was able to complete age appropriate tasks and "learn in accordance to cognitive functioning.  Tr. at 345.  This supporting evidence is sufficient to survive a substantial evidence review.  That there may be evidence to support a contrary conclusion does not authorize this Court to overturn the ALJ's determination.  *Perez*, 77 F.3d at 46-47.

After carefully examining the administrative record, this Court finds that substantial evidence supports ALJ LeCours' decision, including the objective medical evidence and opinions discussed herein.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the evidence in rendering his decision that E.I.E.G. is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

---

[4] The ALJ appropriately rejected a May 17, 2014 IQ test, which yielded a score of 67, suggesting that E.I.E.G. had mild mental retardation.  Tr. at 26.  Dr. Michael Santa Maria, who administered a battery of tests to E.I.E.G., explicitly found that "data as a whole does not support Mild MR[,]" and "defiance and poor effort appear to have adversely impacted [E.I.E.G.'s] performance on the present formal cognitive evaluation."  Tr. at 412.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally flawed and is based on substantial evidence.

Accordingly, IT IS HEREBY ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that Defendant's Cross-Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

DATED:    Buffalo, New York
               February 12, 2019

                                      *s/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**